20-1484 McCoy v. HEAL Systems, LLC 20-1484 McCoy v. HEAL Systems, LLC 20-1484 McCoy v. HEAL Systems, LLC On the first point that you have there, and with respect to the anticipation finding, the Board's definition of POSA as being able to call on this expertise appears in this discussion of obviousness. I'm not clear in what respect the Board relied on that expanded definition in the anticipation analysis. Your Honor, the Board first explicitly relied on the FOSITA definition at Appendix 27 when they were improperly using the 779 patent to teach what an ordinary skilled artist... I think I'm not making my question clear. Oh, sorry. In terms of the analysis for anticipation, where is it that the Board relies specifically on some expert aspect of its POSA definition to reach the anticipation conclusion? So first, respectively, Your Honor, the only definition of POSITA when the Court says what is this ordinary skilled artisan, it's one that accesses and consults with experts. So I would argue that that on 27 is an explicit usage of what we understand is the only interpretation of the Board as to what a POSITA does, going to experts and accessing them. The second response I would have is that every citation to Hill's expert in the Board's opinion is citation to an expert who throughout his expert declarations explicitly and, quite frankly, doubles down on the definition that when I'm talking about a person having ordinary skill in the art, that's a person who would access and consult with experts. I think you're not addressing my question specifically. What I'm asking is where is the Board's analysis of anticipation relying on what might be called additional expertise? Specifically, with respect to what element of the anticipation analysis are they using that heightened definition to reach a conclusion that, oh, yes, it's there because an expert would have told the POSA that it's there? Your Honor, our argument would be that when they are, in their opinion, citing for reliance of substantial evidence Hill's expert's interpretation of, let's say, what Barnhart discloses in The Pressure of the Tailpipe, they are relying on expert testimony that is through the lens of a person having ordinary skill in the art that would be accessing and consulting with experts. So you're correct, Your Honor. They don't say explicitly it's an expert that we're looking at here, except when they define what a person having ordinary skill in the art is later in the opinion. But when they're citing Hill's expert's testimony, they are relying on… To me, the findings they made with respect to anticipation are on a simple level rather than a sophisticated level. Where do they need to draw on sophisticated expert testimony to reach the conclusion of anticipation? Well, Your Honor, I believe on both of the factual findings with regards to Barnhart's Pressure on the Tailpipe limitation, and you're looking at… So we can start on that one, which starts on the appendix at page, let's say, 19 through 20. They are citing Barnhart's…I mean, Hill's expert. So looking at the discussion on 19 where there's this discussion of, okay, Barnhart's Tailpipe, the disclosure says nothing about pressure, but there's this pressure gradient if it's a slippage-dominated versus a friction-dominated. And those citations there on 19 are citations to Hill's expert. And so that's reliance on Hill's expert who's looking at Barnhart through the lens of a faceta that's accessing and consulting with experts to try to interpret what Barnhart means. And so our argument, Your Honor, is that is a reliance on a faceta definition that's improper. And then if you go to the discussion of the requirement for the pump to induce flow up the tailpipe, and that's the discussion that starts on appendix 23. This is where we believe, Your Honor, on appendix 27, they say Petitioner persuasively explains the manner in which an ordinary skilled artisan… …has access to and consults with experts, that's how they would understand the pump. And then if you look at the citations there on that page in particular, the citations to exhibit 1025 is a citation to Hill's expert who's looking at it through that improper lens. Did you argue that on the anticipation issues that any one of these findings required this high level of expertise? Your Honor, we argued that through the proper definition of a faceta… No, no, answer my question. Did you argue that any of the anticipation opinion by the expert required improperly required that level of expertise? We did not explicitly argue that it would require it. Our argument is actually even under an expert interpretation, the law is basically a barrier to finding that Barnhart has these elements… …because the plain language of Barnhart doesn't talk about either of these elements. So our argument was actually the faceta definition is improper. It raises the bar here and makes it very difficult to find these claims valid. But even if you accept their faceta definition and you take a look at Barnhart, and that was our position below basically, was that the faceta definition… What is a problem with the definition of the faceta in this case? It just seems to me that when the Supreme Court looked at a faceta in KSR and said that a faceta is also a thinking creature, that it's practical, it has practical sense. It's difficult for me to understand how one can even rise to be a faceta with a college education and not ever consult experts in the field or read reports that are germane to the faceta's field. Where in the statute does it prohibit – let's start here. Where in the statute does it prohibit the definition that the PTAB arrived at? The statute talks about – so section 103 talks about ordinary skill, and I think here it's those terms together. Judge Reina, we're not arguing that a faceta never accesses an expert. What we're saying is improper when… But that's what the definition here says. It says it can consult or it does have access to. I don't see that the definition that was adopted has bound the board in any way. And then now I agree with what Judge Dyck is asking you. Where do you – where can you point at and say that here the board relied on expert opinion when there should have just been a faceta? So to the first point, Judge Reina, we contend there is a difference between what builds up the ordinary skill versus their definition of an expert, which means that the faceta gets to see what the problem is and then can go ask an expert and say, okay, I'm looking at Barnhart. What should I be seeing here? Or should I combine Barnhart with Gilbert? And their expert even admitted that this would elevate the faceta's ability to solve problems compared to lacking access to them. So it essentially allows you to backdoor in an expert to the faceta because they get access to the faceta, and that runs contrary to the hypothetical person having ordinary skill. Show me in this case where that backdooring occurred. We believe the backdooring occurred when Heal's expert, when talking about – and I'll take it as an example, and that is the Barnhart – the question of whether Barnhart discloses a pressure gradient differential in the tailpipe. And when you read Barnhart, Barnhart says nothing about the pressure gradient in the tailpipe. There's no discussion in the actual text of Barnhart that there would be a reduction in that pressure gradient, nor is there a discussion that the flow in Barnhart would be slippage-dominated. And so then you need to talk to an expert like Heal's expert who would say, I understand you don't see it there, but there are these two things called friction-dominated and slippage-dominated. And Heal's expert even says, as the board quotes on Appendix 19, footnote 6, that most people just ignore the slippage-dominated, but the court still finds – the court, the board – still finds that it is slippage-dominated possible and then finds that Barnhart anticipates. And so we think that is where this expertise through Heal's expert allows you to add a lot to Barnhart, what an expert would understand, Judge Raina, not an ordinary skilled artisan. And that's what generates these errors in the different findings by the court. I see my rebuttal time has gone off, and I'd like to reserve the rest for rebuttal. Okay. How much time do you have left? Just under three and a half minutes, Your Honor. Okay. Thank you. Okay. We'll hear from Mr. Pivnick. Good morning, Your Honor, and may it please the court. Scott Pivnick on behalf of Heal Systems. I want to jump right into the faceta issue. And first, my friend on the other side asserted that the board legally erred in its faceta definition. But I remind the court that the definition of a faceta is reviewed for substantial evidence, not legal error. And there is substantial evidence to support the finding of a faceta. The dispute really focuses on whether the access to experts elevates a faceta to someone beyond a faceta and has expertise. The board looked at the testimony of Heal's expert, Mr. Simpson, who testified that it is industry practice for engineers to consult with others on their team and experts, and that doing so does not convert that person into an expert. Most importantly, Mr. Sutton, who is McCoy's expert, also admitted during his deposition that he routinely talks with engineers and that his discussions with those engineers do not convert those individuals to experts. So the board, in assessing the evidence and Mr. Sutton's admission, found that a faceta who has access to experts does not become an expert themselves. They are simply a faceta and nothing more. The board assessed Mr. Sutton's opinions and found them to be wholly unsupported by any citation to objective evidence and relied heavily on his admission that it would not convert them to experts. This is Judge Taranto. I'm, I guess, interested in how this notion is properly cabined. Would it always be the case that a person of ordinary skill in the art, just as we assume that person knows all the prior art, also has access to at least quick consultations with experts? And if that's the case, what's left of this notion of an ordinary skilled artisan? Or is it industry specific so that if the relevant industry is one in which the ordinary artisan works, you know, in the same lab with or on the same field as experts and the consultation is a regular part of ordinary artisan's problem solving, that in that context expert knowledge can be built into what the skilled artisan has? Yes, sir. And so the answer to that is it's industry specific. There was extensive testimony by Mr. Simpson and by Mr. Sutton that this type of consultation regularly happens in this industry. And because of that... The problem, though, is when you say this type of consultation, I'm not sure that the record shows what type of consultation we're talking about. For example, in this business there's seismic readings that have to be read. And the POSA would consult an expert on how to help him read the seismic data. I mean, yeah, you can understand that that's, as Judge Toronto suggests, that's cabining the thing. Yes, the POSA can have somebody read the seismic data for him. But this definition perhaps doesn't cabinet in that way. It doesn't say what an expert in the field or what a POSA in the field here would need expert advice about. And it can't be that he can just consult any expert on any issue that he wishes. Well, I would first point out, Your Honor, that the board here never held that PSEDA did or would have had to access an expert to make any of the determinations that the board made. They just said in the definition that they could have access to experts, and that would not turn them into something that was not a PSEDA. And that is really the issue. The board analyzed the evidence, including Mr. Sutton and McCoy's admissions, that simply having access to an expert or even accessing an expert does not turn that PSEDA into an expert. Can you focus on the particular place that Mr. Katropia was, I think, focusing on at 8, 19, and 20 of the appendix where the board is reciting, quoting from the expert about what would be understood to have been alluded to in Barnhart, in particular, that some language alludes to an understanding about slippage effects. Either the board is saying, well, the expert understood it that way, which seems like maybe it's not the right standard, because the right standard is what an ordinary artisan would understand, or the board is actually relying on some notion that an ordinary artisan would understand that without consultation, which I don't think it says. Or, to return to what Judge Dyke was saying, some notion must be there that for this kind of reading of prior art, an ordinary artisan would consult an expert, and the board never says that with any specificity. To take on that last part, first, yes, but the board never did say that they would have to consult with an expert. But turning to your specific question, and what my friend on the other side talked about, was he cited to you the statement on the bottom of appendix page 19, in which the board quotes Mr. Simmons, they call him, but truly Mr. Simpson, who is Heal's expert, and talks about the difference between friction-dominated flow and slippage-dominated flow. But if you want to look up higher on that page, it does say that both experts agree that Barnhart's tailpipe, due to its diameter being smaller than the tubing string above it, would reduce the pressure gradient observed in the tailpipe when the fluid mixture flowing through the tailpipe exhibits slippage-dominated flow. So the board was not just relying upon Mr. Simpson's explanation, they also relied upon McCoy's explanation. They just decided to cite to Mr. Simpson in the footnote. But I'll also say that the friction-dominated flow versus slippage-dominated flow is not something that would require extra expertise. A preceded education and work experience definition here was that of a bachelor's degree in petroleum chemical and mechanical engineering, and three to four years of experience working with electrification or artificial lift. And whether or not something is friction-dominated versus slippage-dominated is something that is fairly basic fluid dynamics and physics that they would have learned in that. It does not require expertise beyond that of a faceta to assess whether or not a smaller diameter tailpipe would reduce the pressure gradient when it's exhibiting slippage-dominated flow. What's the record material that says that no special expert consultation is needed to understand that? I don't believe there is a record site for that, Your Honor, but it's also not a record site that says where the board relied upon anything that said someone beyond a faceta would need to have expertise in this. But as you said, and that happens nowhere. Nowhere does the board ever say that something beyond the expertise of a faceta is needed. And they specifically said in their definition of it that it does not turn them into an expert. I wonder on anticipation, and help me with this because I'm not sure that I remember the law correctly, in determining whether a feature exists in the prior art, is that necessarily from the point of view of a POSA, or could an expert say that that feature is present in the prior art reference? Is our law clear about that? I mean, yes, you know, a POSA has to, in the obviousness context, has to be able to say that the combination would occur and would work for its intended purpose, and so on and so forth. But with anticipation in determining whether a particular feature is shown in the prior art, are we limited to what a POSA would know, or is there room for expert testimony about that? Your Honor, I believe it would be what does a person of ordinary skill in the art understand the reference to disclose, and that is exactly what the board did here. It applied what would a person of ordinary skill in the art understand it to be. Okay. Anything further? No, Your Honor, I mean, my friend on the other side never got to any of the other issues, so I will rely on my briefs for that, for the other issues, unless the panel has questions on any of the other issues. Okay. Hearing no further questions, we'll hear from Mr. Katropia. I guess you have three and a half minutes or so left. Thank you, Your Honor. I'd like to, first, to the question that you just asked, Judge Dyke, does the case law agree with counsel of their side, shearing is one of the cases where you do look through the prior art, through the lens of a person having ordinary skill in the art, and that's particularly true here when you're either trying to take a conventional pump and somehow plug it into Barnhart with the method claims, or look at the tailpipe and say, hey, is there something there that Barnhart says nothing about? The second point I would make is on the cabining point. One of the concerns with this approach of saying, hey, let's just see what factually happens in the field, is, one, it runs counter to the idea that the fauceta is a hypothetical person. Just like in negligence law, there's no reasonable person. I can't go find that person. It's a judicial construct. That's the same with the fauceta. It's there for a purpose to balance the level of patentability. And the concern here is, let's say in some art fields, what faucetas do is they just use artificial intelligence. And we plug it into a machine, and we see what the machine tells us to do. Well, then that would mean that in those fields, nothing would be patentable because the fauceta, the ordinary skill artisan, gets to have this access to someone who has a high-level skill in the art. And I think the particular problems here with this definition adopted by the court is actually explained by Hill's expert, where that expert agrees that this basically elevates the person having ordinary skill in the arts' ability to solve a problem because that means I can take a look at this. Let me ask you this. Now, where does the board rely on the event or the situation where a fauceta is consulted with an expert or actually had access to an expert in this case? And what does the board demonstrate the expert's knowledge was relevant to understanding the prior art? And Your Honor, Judge Reina, it's in the – so I would say first they adopt that definition. So I would assume there would be a reason why they did that. Okay, let's – I think the definition is incorrect, but I'm not convinced that error has happened in this case. So Your Honor, my argument would be like that was discussed with the other side on pages 19 through 20. If you remove all the citations to Hill's expert which are based on the improper definition, there is no longer substantial evidence for the appellee who bears the burden to establish anticipation in this case or obviousness. And so that's the reliance. You are correct, Your Honor. It's not explicitly said, but when they're relying on an expert that in both of the declarations kind of doubles down on this improper definition, then we say that is actionable error. And I would ask the court to look to a case like intervention where they talk about when do we have actionable error versus harmless error with the setting of this fauceta definition. And one example they give is when you set the fauceta definition high, which I believe happened here, and you have findings of invalidity, those are the kinds of cases where there's error. And the doubling down by the other side that we believe, Your Honor, is what creates the error in this case. Thank you very much, Your Honors. Okay, thank both counsel. The case is submitted.  Thank you, Your Honors. The honorable court is adjourned from day to day.